# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

HOLLIS DEVIN MARTZ                                                                                    PLAINTIFF

5:14CV00317-DPM-JTK

OJIUGO IKO, et al.                                                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

Plaintiff Hollis Martz is a former state inmate who filed this 42 U.S.C. § 1983 action based on alleged inadequate medical care and treatment while incarcerated at the Varner and Wrightsville Units of Arkansas Department of Correction (ADC) from March, 2014, through August, 2014. (Doc. No. 4.)[1]

Pending before the Court is the Motion for Summary Judgment filed by Defendants Jones Foster (originally identified as Jones), Griswold, Iko, and York (medical defendants) (Doc. No. 111).[2] Plaintiff filed a Response in opposition to the Motion (Doc. No. 120).

### II. Amended Complaint

In his Amended Complaint, Plaintiff claimed Iko saw him on February 19, 2014, for

---

[1] Plaintiff notified the Court of his release from incarceration on September 14, 2015 (Doc. No. 102).

[2] Defendants Kelly, Griffin, Hobbs, Payne, Waddle, Naylor, Smiley, Cobb, Lawrence, and Harris, were dismissed on October 23, 2014 (Doc. No. 9). Defendant Boettger has not been served, despite several attempts (Doc. Nos. 78, 86, 105). Plaintiff has not responded to the Court's Rule 4(m) Order dated October 21, 2015 (Doc. No. 116). Therefore, Defendant Boettger should be dismissed, for failure to serve.

complaints of spinal pain, yet failed to prescribe him medication and refused to prescribe him a back brace and walking cane (Doc. No. 4, p. 5). Plaintiff also claimed Griswold refused to provide him pain relief when he saw her on March 8, 2014 about back pain, and although she claimed she changed his medical class to M-2, he was still classified as M-1. (Id.) He noted Griswold referred him for x-rays on March 21, 2014, after he fell. (Id.)

Plaintiff alleged York, the Health Service Administrator, failed to see that Griswold changed his medical classification and gave Plaintiff "appropriate restrictions," and allowed Iko to "give me unjust medical treatment." (Id.) Finally, he alleged Jones Foster failed to refer him to see an orthopedic physician or back specialist. (Id., p. 6) Plaintiff requested monetary and injunctive relief. (Id.)

## III. Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could

actually affect the outcome of the lawsuit." Id.

    **A.**    **Exhaustion**

        **1.**    **Defendants' Motion**

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his claims against them, as required by the ADC grievance procedure, Administrative Directives (AD) 12-16 and 14-16 (Doc. Nos. 113-1), and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Defendants present the Declaration of Shelly Byers, Medical Grievance Coordinator, who states that the ADC grievance procedures require inmates to be specific as to personnel involved and to exhaust administrative remedies as to all defendants at all levels of the grievance procedure prior to filing a lawsuit. (Doc. No. 113-1, p. 1) Byers reviewed Plaintiff's grievance records and found that he completed the grievance process for one medical grievance as of the time he filed his complaint on August 25, 2014. (Id., p. 2) Defendants state, however, that the issues set forth in this grievance are different from those raised against them in Plaintiff's Amended Complaint, and therefore, they should be dismissed because Plaintiff failed to properly exhaust his administrative remedies.

Plaintiff filed the grievance at issue (VU 14-00536) on April 30, 2014, stating as follows:

> I am assigned to field utility in which to previous injury and strenious tasks (in the field have caused me servere lower back pain I have had a fusion in my neck already and am still affected from a bad motor viehicle accident not including the forced pain of physical labor I am scared that my medical condition is getting worse and more dangerous to my safety and health and I am concerned I will fall on the stairs or down the stairs I have already fallen on several occassions that has caused me bodily harm. Due to medical neglect and unthourough investigation.

(Doc. No. 113-1, p 40)

The Health Services response to the grievance stated in part as follows:

> Your medical record reflects that Griswold APN evaluated you on 4/4/14 for your physical. During that encounter, she noted that you had osteoarthritis of your back and previous neck surgery. Based on her assessment findings, the medical provider

>developed a treatment plan for you, that includes no prolonged standing, crawling, stooping, walking, with a 10 minute break each hour. It also included no strenuous activity lasting longer than six hours and not lifting over 25 pounds.
>
>Your record also reflects that on 5/23/14 York, RNBC evaluated you in sick call for complaints of your medical needs not allowing you to work out in the field. She reviewed with you the physical findings and medications you were on, then referring you to the provider. Dr Iko evaluated you an 5/29/14 and noted your concerns especially with your knee. Based on her assessment findings, the medical provider developed a treatment plan for you, which included adding a knee brace to your current restrictions.

(Id., p. 41)The Assistant Director's response reads in part as follows:

>Your appeal states you have not had an x-ray or MRI. You state you are being ignored by the medical staff at Varner Unit. According to your electronic medical record, a physical was completed for you on April 4, 2014 by Mrs. Griswold, APN. During the physical you were classified as M-3 with these restrictions: restrict from assignment requiring prolonged crawling, stooping, running, jumping, walking, or standing, in excess of 6 hours per day, allow 10 minute break after each hour, restrict from assignment requiring strenuous physical activity in excess of 6 hours per day, allow 10 minute break after each hour, and restrict from assignment requiring lifting of heavy materials in excess of 25 lbs; and/or overhead work in excess of 0 hours per day, allow 10 minute break after each hour.

(Id., p. 43)

Based on the grievance and responses, Defendants state that Plaintiff did not exhaust his complaint allegations against Iko that she failed to properly treat him in February, 2014 for back and shoulder pain; his allegations against Griswold that she did nothing to ease his back pain in March, 2014; or his allegations against York that she failed to see that Griswold changed his medical classification and allowed Iko to provide him unjust medical treatment. In addition, they note that this grievance was written prior to Plaintiff's transfer to the Wrightsville Unit and prior to any encounters with Defendant Jones Foster. Therefore, Defendants state the only allegation exhausted by Plaintiff concerns the alleged change of his medical restrictions by Defendant Griswold.

### 2. Plaintiff's Response

In response, Plaintiff states that "all Defendants had knowledge of my disabilities and medical condition." (Doc. No. 120, p. 1) He then complains that Defendants failed to refer him to be examined by specialists and made decisions for which they were unqualified. He also claims Defendant Griswold did not change his medical classification from M1 to M2 and that he was not removed from field duty following his December, 2013 x-rays. Finally, he claims Defendants failed to properly classify him.

### 3. Analysis

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an

6

inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

In Burns v. Eaton, the Eighth Circuit held that an exhausted grievance which named one officer involved in a pepper spray incident did not cover the plaintiff's allegations against a second officer named in his complaint, when the grievance did not name the second officer and did not include a description of his allegedly-unlawful actions. The Court stated, "this was not a case where 'prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits.'" 752 F.2d 1136, 1141 (quoting Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010)).

In this case, the ADC grievance policies in effect clearly instruct inmates to "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate..." (Doc. No. 113-1, pp. 5, 25-26) The Court has reviewed the grievance and responses, and finds that Plaintiff failed to exhaust his complaint allegations against Defendants Iko, York, and Jones Foster. He does not mention any of the Defendants in his grievance, and that complaint is centered around his medical classification and his job duties. Although the responses mention Iko and York, the references are not to the allegations set forth in his Amended Complaint (Doc. No. 4), that Iko improperly treated him in February, 2014, and York failed to monitor that or to see that Griswold changed his medical classification. And, there is no mention of Jones Foster in the grievances; as Defendants note, her

7

contact with Plaintiff occurred after the filing of the grievance when he was transferred to the Wrightsville Unit. Therefore, the Court finds these three Defendants should be dismissed without prejudice.

### B. Eighth Amendment Claim

#### 1. Defendant Griswold

Defendant produces a copy of Plaintiff's medical records during the relevant time period, together with a Declaration of Dr. Jeffrey Stieve, Regional Medical Director of Correct Care Solutions, LLC, stating that Defendants' treatment of Plaintiff was medically appropriate (Doc. No. 113-2) . According to the medical records, Defendant Griswold saw plaintiff relating to sores on his back on March 8, 2014, and treated him for contact dermatitis. (Id., p. 19) Griswold again saw Plaintiff on March 21, 2014, when he complained of back and neck pain. (Id., p. 20) She noted he did not complain of radicular symptoms, had a steady gait, erect posture, and good flexion. (Id.) She assessed him with subjective low back pain, ordered x-rays and instructed him to continue his current medications. (Id.) She again saw Plaintiff on April 4, 2014, with respect to his complaints of pain. (Id., p. 24) She decided to change his medical classification and add restrictions, partially based on a mistaken belief caused by a typographical error in a radiology report indicating he had "significant spondylosis lumbar spine." [3] (Id.) Therefore, she changed his classification from M-1 to M-2 and added restrictions. (Id.)Based on this treatment, Defendant states Plaintiff cannot show that she acted with deliberate indifference to his serious medical needs.

---

[3]According to Dr. Stieve's declaration, the radiology report of the x-ray taken of Plaintiff's lumbar spine in December, 2013, contained a typographical error. The impression was "stable, unremarkable AP view of the lumbar spine," and the recommendation "5 lumbar type vertebrae which appear grossly unremarkable **and evidence** of fracture, significant spondylosis." (Doc. No. 113-2, emphasis added) Dr. Stieve believes the findings should have stated, "and no evidence," and that such is consistent with the radiologist's impression. (Doc. No. 113-2, p.2)

### 2. Plaintiff's Response

Plaintiff complains that although he fell at Varner on March 10, 2014, x-rays were not taken until September 17, 2014, and that Defendants were not qualified to diagnose him without referring him to a specialist. He also claims Dr. Stieve's declaration is untruthful, and that Griswold did not change his medical classification in April, 2014.

### 3. Analysis

To support an Eighth Amendment deliberate indifference claim, Plaintiff must allege and prove that Defendants acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). An allegation of negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d at 502 (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

According to the medical records, Defendant Griswold modified Plaintiff's restrictions on April 4, 2014 (Doc. No. 113-2, pp. 24-28). The grievance response noted that based on Griswold's medical assessment, the medical provider developed a treatment plan for Plaintiff. (Doc. No. 113-1, p. 41) In Plaintiff's medical record of April 30, 2014, Plaintiff reported that he was happy to be off

the hoe squad and in a new job. (Doc. No. 113-2, p. 29) Although Plaintiff claims that his medical classification was not changed from M-1 to M-2, the medical records support a finding that Defendant Griswold acted in Plaintiff's best interests, and not with deliberate indifference, when she modified his restrictions, and the records support a finding that his job responsibilities were changed as a result. Plaintiff's complaint in his Response about a delayed x-ray following a March, 2014 fall are not part of the Amended Complaint allegations, and were not mentioned in the grievance. Plaintiff provides no evidence of a serious medical need (other than complaints about back pain) or that Defendant Griswold deliberated acted with indifference to that need. Therefore, the Court finds as a matter of law that Defendant is entitled to summary judgment on Plaintiff's claims against her.

## IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Summary Judgment Motion (Doc. No. 111) be GRANTED.

2. Plaintiff's claims against Defendants Jones Foster, Iko, and York be DISMISSED without prejudice, for failure to exhaust administrative remedies.

3. Plaintiff's claims against Defendant Boettger be DISMISSED without prejudice, for failure to serve.

4. Plaintiff's claim against Defendant Griswold be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 16th day of December, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE